IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


KATHY WOLFE,                    )    Civil No. 05-895-JE
                               )
            Plaintiff,         )    FINDINGS AND
                               )    RECOMMENDATION
        v.                     )
                               )
JO ANNE B. BARNHART,           )
                               )
            Defendant.         )
_____)

        Rory Linerud
        P.O. Box 1105
        Salem, OR 97308
            Attorney for Plaintiff

        Neil J. Evans
        Asst. U.S. Attorney
        1000 S.W. Third Avenue, Suite 600
        Portland, OR 97204-2902

        Michael McGaughran
        Social Security Administration
        Office of General Counsel
        701 5th Avenue, Suite 2900 M/S 901
        Seattle, WA 98104-7075
            Attorneys for Defendant


FINDINGS AND RECOMMENDATION - 1

JELDERKS, Magistrate Judge:

Plaintiff Kathy Wolfe brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for Social Security disability insurance benefits (DIB) under the Social Security Act (the Act). The decision of the Commissioner should be reversed, and the action should be remanded for further proceedings.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB on October 16, 2002, alleging that she had been disabled since July 15, 2000, because of lumbar disc disease, chronic pain, plantar fasciitis, sleep apnea, diabetes with neuropathy in hands and feet, and right knee pain. The application was denied initially on December 23, 2002, and was denied on reconsideration on April 21, 2003.

Based upon plaintiff's timely request, a hearing was held before Administrative Law Judge (ALJ) Timothy Terrill on June 15, 2004. Plaintiff; Cheryl Hutchinson, plaintiff's friend; and Thomas Weiford, a Vocational Expert (VE), testified at the hearing.

In a decision filed on January 28, 2005, the ALJ found that plaintiff was not disabled within the meaning of the Act. That decision became the final decision of the Commissioner on

June 11, 2005, when the Appeals Council denied plaintiff's request for review.  Plaintiff seeks review of that decision in the present action.

## FACTUAL BACKGROUND AND MEDICAL RECORD

Plaintiff was born in 1953, and was 52 years old at the time of the ALJ's decision.  Plaintiff has a high school education and attended a tractor-trailer driving school.  She has past relevant work experience as a security guard, a personal care-giver, a daycare provider, and as a bakery, logistics, delivery, and school van driver.  Plaintiff has not engaged in substantial gainful activity since July 15, 2000, the date of the alleged onset of her disability.

Plaintiff largely accepts the ALJ's recitation of her medical record, and appears to object only to his analysis of the evidence of her psychiatric condition and carpal tunnel syndrome.  Accordingly, I will summarize only the evidence in the medical record relating to plaintiff's mental impairments and carpal tunnel syndrome.

At the conclusion of the hearing, the ALJ indicated that he would arrange to have plaintiff referred for a consultative psychiatric examination.  Robert Kruger, Psy. D., a clinical psychologist, performed the examination on August 21, 2004. Dr. Kruger reported that plaintiff's "overall attention ability and capability of sustaining her attention on brief,

basic, routine repetitive tasks were seen as fair, such that she would be able to complete those tasks adequately within an appropriate period of time." He stated that, though adding details to tasks she had already learned would be difficult for plaintiff without additional supervision and repetition, "with ongoing supervision and structure, she most likely would be able to meet the requirements of those simple repetitive tasks." Dr. Kruger noted that he did not administer formal psychometric tests, but estimated that plaintiff was "functioning within the low-average range." Though plaintiff "demonstrated difficulty with short-term memory tasks," Dr. Kruger opined that "with repetition [she] would be capable of learning simple, routine tasks adequately and independently." He added that plaintiff "did not demonstrate, nor did she report any psychiatric symptomatology reflective of a psychotic or anxiety-related disorder," but "reported and presented features, behaviors and signs suggestive of a major depressive disorder, recurrent, moderate." Dr. Kruger diagnosed a major depressive disorder, recurrent, moderate; a personality disorder, NOS, with dependent features; and reported back pain, sleep apnea, diabetes, and high body weight. He assessed plaintiff's then current and past GAF as 55.

On a form entitled "Medical Source Statement of Ability to do Work-Related Activities (Mental)," Dr. Kruger indicated

that plaintiff had no restrictions in her ability to
understand and remember short, simple instructions; ability to
carry out short, simple instructions; and ability to make
judgment on simple work-related decisions.  He indicated that
plaintiff had moderate restrictions in her ability to
understand and remember detailed instructions, and in her
ability to carry out detailed instructions.  Dr. Kruger
further indicated that plaintiff had slight restrictions in
her ability to interact appropriately with the public,
supervisors, and co-workers; ability to respond appropriately
to work pressures in a usual work setting; and ability to
respond appropriately to changes in a routine work setting.

     In the record of a visit dated February 26, 2004,
J. David Hook, M.D., noted that plaintiff had a "moderate
level of carpal tunnel or median neuropathy at the wrists
bilaterally."  Dr. Hook added that plaintiff had "a type of
carpal tunnel that sometimes would go to surgery, but more
often would probably be tried on splints and optimizing it
other ways."  Dr. Hook noted that plaintiff continued to
experience numbness in the median distribution in her hands,
which "increased with compression maneuvers of the carpal
tunnel, and withdrawal of the hand intrinsics into the carpal
tunnel as with making a fist."  He indicated that he would
refer plaintiff for therapy "and have them fabricate some
splints for her."  Dr. Hook opined that, though plaintiff

could probably use "the over the counter variety," those would fit poorly because of plaintiff's size.

## HEARING TESTIMONY

Plaintiff and her roommate, Cheryl Hutchison, testified that plaintiff was very limited in her ability to walk, that plaintiff often fell asleep, and that plaintiff's back pain prevented her from engaging in most activities.  Ms. Hutchison testified that plaintiff had no energy, seemed to be sad all the time, and spent all day in her night clothes about five days a week.

Plaintiff testified that she had attempted suicide twice, that she was often depressed, and that she was afraid of other people and of public restrooms.  Plaintiff also testified that she was always in pain, and that on bad days, she just sat, stood, and laid down, and that on good days she could do chores around the house, though it took her a long time to complete them.  Plaintiff testified that she had trouble bending because of back pain, that she fell occasionally when her knee hurts, and had weakness in her legs.  She also testified that she had difficulty getting up and walking after sitting, and that she had to lean against a wall at times. Plaintiff testified that she could stand for ten minutes, was afraid of falling, could take stairs slowly, and could not reach overhead.

The VE testified in response to several hypotheticals posed by the ALJ.  The ALJ first described an individual with plaintiff's age, education, and vocational experience who could lift 20 lbs. occasionally and 10 lbs. frequently, and could occasionally stoop, crouch, or bend.  The VE testified that such an individual could perform plaintiff's past work as a security guard, and could work as a small products assembler and hand packager.

In his second hypothetical, the ALJ added to these limitations a requirement that the individual not be exposed to hazardous environments, interact only occasionally with the public, perform only simple routine repetitive work, and not work above shoulder level.  The VE testified that such an individual could not perform plaintiff's past security guard work, but could work as an assembler or hand packager.

In his third hypothetical, the ALJ added that the individual could stand or walk for one half hour at a time, could not stand or walk more than two hours total during a workday, and could sit for a maximum of one half hour at a time.  The VE testified that these additional limitations would not impact the ability to perform the assembler or hand packing jobs.

In his fourth hypothetical, the ALJ added that the individual would have "two unscheduled, unexcused absences

per month."  The VE testified that an individual with this limitation would not be able to sustain employment.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9ᵗʰ Cir. 1999).

<u>Step One</u>.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

<u>Step Two</u>.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

<u>Step Three</u>.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404,

Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.  20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the claimant is able to perform work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet

this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

   At Steps One through Four, the burden of proof is on the claimant.  <u>Tackett</u>, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  <u>Id.</u>

### ALJ'S DECISION

   In a finding that plaintiff does not dispute in this action, the ALJ concluded that the statements of plaintiff and Ms. Hutchison concerning plaintiff's impairments and their effects on plaintiff's ability to work were not "entirely credible."

   The ALJ thoroughly reviewed the medical record, and except for his conclusions about plaintiff's psychiatric condition, his analysis is largely unchallenged here.  Based upon his review of the medical record, the ALJ found that plaintiff's degenerative disc disease, diabetes, neuropathy, and depression were "severe" impairments, but that they did not meet or equal the criteria of any impairments in the "listing."  The ALJ found that plaintiff had a moderate degree of depressive disorder.  He found that this in turn resulted in a moderate limitation in plaintiff's ability to understand, remember, and carry out detailed instructions, and "slight limitations in interacting appropriately with the public, with

supervisors and co-workers, in responding appropriately to work pressures and to responding appropriately to changes in a work setting."  The ALJ also found that plaintiff had "only mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, and pace."  He found no evidence that plaintiff had experienced any episodes of decompensation.

The ALJ concluded that, despite her impairments, plaintiff retained the functional capacity to perform the exertional requirements of "light" work, which requires the ability to lift up to 20 pounds occasionally and to lift 10 pounds frequently.  He further concluded that, because of her anxiety, plaintiff should have no more than occasional contact with the public.  The ALJ added that plaintiff should not stoop, crouch, or bend more than occasionally, and, because of her "falling and imbalance," should not be exposed to hazards. The ALJ found that plaintiff could perform "only simple routine, repetitive work due to her pain, medications and depression," and that she should not perform overhead work. He added that plaintiff "must be allowed to sit or stand at a minimum of 30 minute intervals."

In the body of his decision, the ALJ stated that plaintiff lacked the residual functional capacity to perform her past relevant work, and that the Social Security Administration accordingly bore the burden of establishing

that she could perform other jobs that existed in substantial numbers in the national economy.  However, in the "Findings" portion of the decision, the ALJ stated his contradictory conclusion that plaintiff "is able to perform the requirements of her past relevant work as a security guard only."

Based upon the testimony of the VE, the ALJ concluded that plaintiff could work as a small products assembler or as a hand packager, which he characterized as light, unskilled jobs.  Accordingly, the ALJ found that plaintiff is not disabled within the meaning of the Social Security Act.

## STANDARD OF REVIEW

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record

FINDINGS AND RECOMMENDATION - 12

as a whole.  42 U.S.C. § 405(g); see also Andrews v. Shalala,
53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence
means more than a mere scintilla but less than a
preponderance; it is such relevant evidence as a reasonable
mind might accept as adequate to support a conclusion."
Andrews, 53 F.3d at 1039.  The court must weigh all of
the evidence, whether it supports or detracts from the
Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771,
772 (9th Cir. 1986).  The Commissioner's decision must be
upheld, however, even if "the evidence is susceptible to more
than one rational interpretation."  Andrews, 53 F.3d at
1039-40.

## DISCUSSION

Plaintiff contends that the ALJ erred at steps four and
five, in concluding that she retained the residual functional
capacity to perform her past relevant work as a security
guard, and in concluding that she could also perform other
work as a small products assembler and hand packager.
Plaintiff argues that the ALJ erred in relying on VE testimony
that was erroneous because it contradicted descriptions of the
small products assembler and hand packager positions set out
in the Dictionary of Occupational Titles (DOT).  Plaintiff
also contends that the ALJ erred in assessing her residual
functional capacity by concluding that she was only mildly
limited in her ability to maintain concentration, persistence,

and pace, and in omitting any limitations on her ability to interact appropriately with coworkers and supervisors, and on her ability to respond appropriately to work pressures in a usual work setting. Plaintiff contends that the ALJ erred in failing to add limitations related to vision problems plaintiff experienced because of her diabetes, and limitations related to plaintiff's diagnosed moderate bilateral carpal tunnel syndrome. She asserts that the ALJ's related failure to include limitations based upon these impairments in his hypothetical to the VE resulted in VE testimony that lacked evidentiary value. Finally, plaintiff contends that, by failing to incorporate all of her limitations in the hypotheticals and failing to incorporate all of her limitations in his residual functional capacity analysis, the ALJ failed to fully develop the record.

1. <u>ALJ's Conclusions about Plaintiff's Ability to Perform Past Work</u>

As noted above, in the body of his decision, the ALJ stated that plaintiff could not perform any of her past relevant work, but concluded in the Findings portion of the decision that she could perform her past work as a security guard.

The ALJ erred in concluding, in his Findings, that plaintiff could perform her past work as a security guard.

FINDINGS AND RECOMMENDATION - 14

When the ALJ included in his hypothetical to the VE
limitations precluding exposure to hazardous environments,
allowing for only occasional public interaction, and
restriction to simple routine repetitive work with no work
above shoulder level, the VE testified that the work as a
security guard was eliminated.  Given that he included those
restrictions in the residual functional capacity assessment,
the ALJ should not have concluded that plaintiff could perform
the security guard work.


2. Asserted disparity between VE's description of small
products assembler and hand packager positions and description
of these positions in DOT

        Though the ALJ erred in concluding that plaintiff can
perform her past work as a security guard, the ALJ's decision
could still be upheld if the Secretary has carried the burden
of establishing that plaintiff can perform other work that
exists in substantial numbers in the national economy.

        Plaintiff contends that the ALJ erred by relying on the
VE's testimony that an individual with her residual functional
capacity could perform the requirements of the small products
assembler and hand packager positions.  Plaintiff contends
that these positions, as described in the Dictionary of
Occupational Titles (DOT), cannot be performed with someone

who is limited to light work and who cannot be exposed to a hazardous environment.

a. Small products assembler

In testifying that a person with plaintiff's residual functional capacity could perform work as a small products assembler, the VE did not identify a particular DOT code. The DOT describes two small product assembler positions, which are labeled "Assembler, Small Products I" and "Assembler, Small Products II." Plaintiff correctly notes that the DOT description for the Assembler I position states that a worker:

> Performs any combination of following repetitive tasks on assembly line to mass produce small products . . . . Positions parts in specified relationship to each other, using hands, tweezers, or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand or using hand tools or portable powered tools. Frequently works at bench as member of assembly group assembling one or two specific parts and passing unit to another worker. Loads and unloads previously setup machines, such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches, to perform fastening, force fitting, or light metal-cutting operation on assembly line.

The DOT description for the Assembler II position states that a worker:

> Performs any combination of following duties to assemble parts of various materials . . . . Positions parts in specified relationship to each other, using hand, tweezers, or tongs. Bolts, screws, clips, cements, or otherwise fastens parts together by hand, using hand tools, portable powered tools, or bench machines. Performs fastening, force fitting, or light cutting operations, using machines

FINDINGS AND RECOMMENDATION - 16

such as arbor presses, punch presses, taps, spot-welding or riveters.

Plaintiff contends that these positions, as described in the DOT, are inconsistent with the ALJ's assessment of plaintiff's residual functional capacity. I agree. As noted above, the ALJ concluded that, because of her "falling and imbalance," plaintiff should not be exposed to hazards. Regardless of which of the Assembler positions the VE was referring to, the position appears to pose hazards that are precluded by the ALJ's exclusion of hazards in the workplace because of plaintiff's "falling and imbalance." Both the Assembler I and Assembler II positions require use of hand or power tools, and require work with or in the proximity of presses, spot-welding machines, taps, and riveters.

Certainly, it is not my role to substitute my understanding of the nature and requirements of a given position for that of the VE. However, from the descriptions in the DOT, it is difficult to avoid the conclusion that the Small Products Assembler positions pose hazards to a worker who has balance problems and falls easily that are inconsistent with the ALJ's residual functional assessment.

Clearly, an ALJ may rely on expert testimony that contradicts the DOT. Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). However, an ALJ may do so "only insofar as the record contains persuasive evidence to support the deviation." Id. Here, the ALJ appears to have relied on

expert testimony that contradicted the DOT, and there is no evidence in the record whatsoever to support the "deviation" between the VE's testimony that an individual with plaintiff's residual functional capacity could work as a Small Products Assembler and the description of Assembler work set out in the DOT.  In the absence of such evidence, the Assembler position should be disregarded in determining whether plaintiff can perform jobs that exist in substantial numbers in the national economy.

b. <u>Hand packager position</u>

As noted above, the ALJ found that plaintiff retained the functional capacity to perform only "light" work, which required the ability to lift up to 20 pounds occasionally and 10 pounds frequently.  However, the hand packager position that the VE identified as within plaintiff's residual functional capacity requires the ability to perform work at a medium exertional level.  <u>See</u> DOT Code 920.587-018 (listing strength requirement of hand packager position as "M").  This would require plaintiff to occasionally lift up to 50 pounds, which far exceeds the maximum lifting requirement of light work.

As with the Small Products Assembler positions discussed above, the record includes no evidence supporting the deviation between the VE's testimony and the exertional

requirements of the hand packager position set out in the DOT.
Accordingly, the hand packager position should not be used to
establish that plaintiff retains the functional capacity to
perform jobs that exist in substantial numbers in the national
economy.

3.   <u>Appropriate disposition in light of these errors</u>

     For the reasons set out above, the ALJ's conclusion that
plaintiff could perform her past work as a security guard and
could perform other specified work was not supported by
substantial evidence in the record.  In the absence of a
sustainable conclusion that plaintiff could perform any work,
the Commissioner's conclusion that plaintiff is not disabled
should be reversed.  The remaining question is whether the
action should be remanded for an award of benefits, or for
further proceedings.

     Whether an action is remanded for an award of benefits or
for further proceedings depends on the likely utility of
additional proceedings.  <u>Harman v. Apfel</u>, 211 F.3d 1172, 1179
(9th Cir. 2000).  In determining whether additional proceedings
may be useful, courts consider whether there are outstanding
issues that need to be resolved before a determination of
disability can be made.  <u>E.g.</u>, <u>Smolen v. Chater</u>, 80 F.3d 1273,
1292 (9th Cir. 1996).

This action should be remanded for further proceedings because outstanding issues remain.  The ALJ erred in concluding that plaintiff could perform her past work as a security guard.  He also erred in relying on VE testimony that was contrary to the DOT as to other work.  However, it is not clear that the Commissioner cannot meet the burden of establishing that plaintiff can perform work that exists in substantial numbers in the national economy.  It is possible that a VE may identify work that is within the limitations imposed by plaintiff's residual functional capacity.  It is also possible that a VE could support the conclusion that plaintiff could perform the other work identified in this action by explaining why the apparent hazardous conditions of the assembler position and the strength required of the hand packager position do not preclude this work for an individual with plaintiff's residual functional capacity.  Therefore, the action should be remanded for further proceedings, and not for an award of benefits.

On remand, the Agency should revisit the question of whether other work exists within plaintiff's residual functional capacity.  In carrying out that analysis, attention should be given to plaintiff's bilateral carpal tunnel syndrome.  In his decision denying plaintiff's application for benefits, the ALJ noted the diagnosis of carpal tunnel syndrome, but did not characterize it as severe impairment,

include any limitation related to it in his residual

functional capacity analysis, or ask the VE how carpal tunnel

syndrome would affect the ability to perform work as a product

assembler and hand packager.  On remand, the effect of

plaintiff's carpal tunnel syndrome on plaintiff's residual

functional capacity should be analyzed, and if plaintiff's

ability to do production work is considered, the ALJ should

address the impact of plaintiff's carpal tunnel syndrome on

the ability to perform such work.[1]

I disagree with plaintiff's assertion that the ALJ erred

in concluding that she was only mildly limited in her ability

to maintain concentration, persistence, and pace: That

conclusion appears to be consistent with the assessment of

Dr. Kruger, which the ALJ addressed in his decision.  In

addition, contrary to plaintiff's argument, Dr. Kruger was not

required to assess these factors on any specific form.

However, the ALJ did not include in his hypothetical

plaintiff's slight difficulty in interacting appropriately

with the supervisors and co-workers, and in responding

---

[1] I do not agree with plaintiff's contention that the ALJ
erred in failing to specifically address her vision problems.
Plaintiff has not cited any medical evidence indicating that
she has vision problems associated with diabetes.  The ALJ
noted plaintiff's complaint about worsening eyesight, but found
plaintiff to be less than wholly credible in a credibility
determination that has not been challenged here.  Based upon
the medical record and testimony which was before the ALJ, I
conclude that he did not err in failing to specifically address
plaintiff's vision in his residual functional analysis and in
his hypotheticals posed to the VE.

appropriately to work pressures in a usual work setting.  On remand, those difficulties should be considered.[2]

Finally, though my recommendation that this action be remanded for further proceedings makes it unnecessary to do so, I will briefly note my disagreement with plaintiff's contention that the ALJ failed to fully develop the record because he did not incorporate all of plaintiff's limitations in the residual functional capacity analysis and in hypotheticals posed to the VE.  The absence of certain impairments in the residual functional capacity analysis and in the hypotheticals posed to the VE does not constitute a failure to fully develop the record concerning plaintiff's impairments.  The medical record appears to be fully developed.  Instead, the omission appears to simply reflect the ALJ's opinion as to the plaintiff's limitations and impairments.

**CONCLUSION**

The Commissioner's decision denying plaintiff's application for benefits should be REVERSED and this action should be REMANDED to the agency for further proceedings as set out above.  Plaintiff's past work should be excluded, and plaintiff's ability to perform other work should be examined.

---

[2]The ALJ's inclusion of a limitation to only occasional public interaction adequately incorporated the slight difficulty in interacting with public that Dr. Kruger had found.

If a VE again testifies that plaintiff can work as a products assembler or hand packager, the apparent disparity between plaintiff's residual functional capacity and the description of these positions set out in the DOT should also be examined. On remand, the effect of plaintiff's carpal tunnel syndrome on plaintiff's residual functional capacity should be analyzed, and if plaintiff's ability to do production work is considered, the ALJ should address the impact of plaintiff's carpal tunnel syndrome on the ability to perform such work. On remand, in analyzing plaintiff's ability to perform specific jobs, plaintiff's slight difficulty in interacting appropriately with the supervisors and co-workers, and in responding appropriately to work pressures in a usual work setting, should also be considered.

A judgment should be entered remanding this action for further proceedings.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review.  Objections, if any, are due May 31, 2006.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

A party may respond to another party's objections within 10 days after service of a copy of the objection.

FINDINGS AND RECOMMENDATION - 23

If objections are filed, review of the Findings and

Recommendation will go under advisement upon receipt of

the response, or the latest date for filing a response.

DATED this 15th day of May, 2006.

/s/  John Jelderks
John Jelderks
U.S. Magistrate Judge